UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| CAMPBELL SOUP SUPPLY COMPANY, LLC, | ) | CASE NO. 5:18-cv-942 |
|---|---|---|
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| v. | ) | **MEMORANDUM OPINION AND ORDER OF TRANSFER** |
| DIRECT CONTACT, LLC, | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Direct Contact, LLC ("Direct") to dismiss for improper venue, or in the alternative, to transfer venue to the Eastern District of Texas. (Doc. No. 9 ["Mot."].) For the reasons discussed herein, defendant's motion to dismiss is DENIED, and defendant's motion to transfer is GRANTED.

## I.  BACKGROUND

This case arises out of a contract dispute between plaintiff Campbell Soup Supply Company, LLC ("Campbell") and Direct. Campbell is a Delaware corporation with its principal place of business in New Jersey. (Doc. No. 1 ["Compl."] ¶ 1.) Direct is an Ohio company with its principal place of business in Stark County, Ohio. (*Id.* ¶ 2.) Direct represents, and Campbell does not dispute, that Direct is now defunct. (Mot. at 2;[1] Doc. No. 9-1 ["Carson Aff."] ¶12.)

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

In April 2014, Campbell sent a request for proposal to Direct regarding a water heating system for Campbell's Paris, Texas, facility to heat water for the manufacturing of certain Campbell food products and washing operations. (Compl. ¶ 6.) After discussions between Campbell, through James (Bing) Cheng ("Cheng"), and Direct's chief engineer William Carson ("Carson"), Campbell issued its purchase order to Direct for the water heating system on or about May 16, 2014. (*Id.* ¶¶ 8–10.)

During these discussions, Carson worked from Washington. (Carson Aff. ¶ 7, 11.) Campbell's purchase orders pertaining to the water heating system were sent to Direct's mailing address in Canton, Ohio. (Doc. No. 10-1 (Affidavit of James "Bing" Chang) at 79, ¶ 4.) The invoices sent from Direct to Campbell listed Direct's mailing address in Canton, Ohio. (*Id.* ¶¶ 4–5.)

Direct designed, provided, and commissioned a water heating system for Campbell's Paris, Texas, facility. (Compl. ¶ 18.) Campbell alleges that, "[t]he water heating system [provided] by [Direct] did not perform as required under the Contract and as promised by [Direct] in its proposal and email communications to Campbell's . . . ." (*Id.* ¶ 20.) Campbell's allegations include defects to the design and build of the water heating system. (*Id.*) As a result of the system's defects, Campbell alleges the system produced contaminants in the heated water used in Campbell's food product. (*Id.* ¶ 21.) Thereafter, Campbell was able to isolate the contaminated food products and dispose of them. (*Id.* ¶ 22.) Campbell then modified the system at Campbell's expense, after Direct failed to correct the problems. (Doc. No. 10 ["Opp'n"] at 70.) Campbell estimates the defective system cost Campbell damages in excess of $1,000,000. (Compl. ¶ 26.)

Campbell filed their complaint in this Court. Thereafter, Direct filed the present motion to dismiss for improper venue, or in the alternative, transfer venue to the Eastern District of Texas. Campbell filed an opposition to the motion, and Direct filed a reply (Doc. No. 11 ["Reply"]).

## II. DISCUSSION

Direct's motion to dismiss for improper venue arises under Fed. R. Civ. P. 12(b)(3). Direct's alternative motion to transfer venue arises under 28 U.S.C. § 1404(a). The Court will consider each motion in turn.

### A. Motion to Dismiss for Improper Venue

A motion to dismiss for improper venue filed under Fed. R. Civ. P. 12(b)(3) is the procedural vehicle by which to challenge improper venue. The requirements for venue are set by statute. 28 U.S.C. § 1391; *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). In diversity actions, venue is proper in any district in which all defendants reside, or in which the claim arose. 28 U.S.C. § 1391. Section 1391(b) provides in pertinent part:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .

For venue purposes, a corporate entity is: "deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2).

The Court applies Ohio law to determine whether a corporate entity is subject to the Court's personal jurisdiction. *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir. 1988). Under Ohio law, the Court must determine (1) whether Ohio's long-arm statute confers personal jurisdiction and (2) whether granting jurisdiction would violate the defendant's due process rights.

*Goldstein v. Christiansen*, 638 N.E.2d 541, 543 (Ohio 1994) (per curiam). Relevant here, Ohio's long-arm statute confers personal jurisdiction over any person or entity transacting business in the state. Ohio Rev. Code § 2307.382(A)(1). To satisfy the due process prong, the defendant must have certain "minimum contacts" with the forum state. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). An entity's incorporation or principal place of business in the forum state satisfies the minimum contacts test. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011).

Here, Direct captions their motion, in part, as a motion to dismiss for improper venue under Rule 12(b)(3). However, in their motion, Direct has not identified any reason as to why venue is improper in this district. Contrarily, Direct states that it "had its 'corporate headquarters' located in Stark County, Ohio at the times alleged in the [c]omplaint." (Mot. at 56.)

The Court determines that venue is proper in this district pursuant to 28 U.S.C. § 1391 because Direct—being the only defendant named in this action—is organized under Ohio law and had its principal place of business within this district. As such, defendant's motion to dismiss for improper venue under Rule 12(b)(3) is DENIED.

### B. Motion to Transfer Venue

Alternatively, Direct motions for this Court to transfer venue to the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).

#### 1. Standard of Review

Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." Section 1404(a) is intended to "protect litigants, witnesses and the public

against unnecessary inconvenience and expense[.]" *Cont'l Grain v. F.B.L.-585*, 364 U.S. 19, 27, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 (1960).

"Typically, more than one forum could be an appropriate venue for trial and some inconvenience will exist to either party no matter which venue is chosen." *Siegfried v. Takeda Pharm. N. Am., Inc.*, No. 1:10-CV-02713-JG, 2011 WL 1430333, at *2 (N.D. Ohio Apr. 14, 2011). Thus, if transferring venue will merely "shift the inconvenience from one party to another," a change of venue is inappropriate. *Id.* at *2 (citing among authority *Van Dusen v. Barrack*, 376 U.S. 612, 646, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964)).

A district court decides motions to transfer under 28 U.S.C. § 1404(a) on a case-by-case basis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 28, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988); *Norwood v. Kirkpatrick*, 349 U.S. 29, 75 S. Ct. 544, 99 L. Ed. 789 (1955). District courts decide motions to transfer venue using a two-step analysis. First, the court must determine whether the case "might have been brought" in the transferee court. *Cont'l Grain*, 364 U.S. at 21. If so, the court then balances several factors, including the convenience of the parties and witnesses, judicial economy, and the interests of justice. *See Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

Concerning the first step of the analysis, "[a]n action 'might have been brought' in a transferee court if: (a) the court has jurisdiction over the subject matter of the action; (b) venue is proper there; and (c) the defendant is amenable to process issuing out of the transferee court." *Emerman v. Fin. Commodity Invs., LLC*, No. 1:13 CV 2546, 2014 WL 12588501, at *2 (N.D. Ohio July 22, 2014) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)).

For the second step, the Sixth Circuit has outlined several factors that a district court should consider when deciding whether to transfer venue, including the private interests of the parties and

5

other public interests concerns. *Moses*, 929 F.2d at 1137. "Courts are to consider both the private interests of the litigants and the public interests in the administration of justice." *Emerman*, 2014 WL 12588501, at *2 (citing *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)).

In *Gilbert*, the Supreme Court explained:

> Important considerations [of the litigants] are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil v. Gilbert*, 330 U.S. at 508. "Public interests include '[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law.'" *Emerman*, 2014 WL 12588501, at *2 (quoting *Jamhour*, 211 F. Supp. 2d at 945).

Importantly, no one factor that a district court should consider is determinative. *Stewart v. Dow Chem. Co.*, 865 F.2d 103, 106 (6th Cir. 1989). The moving party has the burden of establishing that the factors weigh "strongly" in favor of transfer. *Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998) (citing *Bacik v. Peek*, 888 F. Supp. 1405, 1414 (N.D. Ohio 1993)). "[A] district court 'has broad discretion to grant or deny a motion to transfer [a] case.'" *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (quoting *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986)).

### 2. Analysis

Direct argues that "all of the alleged activity—and all of the damages sustained by Campbell—occurred in Paris, Texas." (Mot. at 56.) Further, Direct contends that "the only connection this case has to the Northern District of Ohio," are that Direct is organized under Ohio

law and had its principal place of business here, and invoices and purchase orders were addressed to Direct's office here. (*Id.*)

Regarding the first step in the Court's transfer analysis, neither party contends that venue would be improper in the transferee court—the Eastern District of Texas. Further, on its own analysis, the Court determines that venue would be proper in the Eastern District of Texas.

Moving to the second step of the analysis, the Court must consider a number of factors and determine whether they weigh strongly in favor of transferring venue.

### a. *Convenience of the Witnesses*

Here, Direct argues that Texas is a more convenient forum for witnesses because many witnesses will include Campbell employees located in Texas who worked with the water heating system. However, Campbell counters that Direct has not provided anything to suggest that Campbell employees would not willingly travel to the Northern District of Ohio. The Court agrees. Direct has not alleged any facts to suggest that Campbell employees would not willingly travel to the Northern District of Ohio, or otherwise comply with discovery in this case. Likewise, Direct's engineers live in Washington and, thus, neither Texas nor Ohio is relatively convenient for these witnesses. Thus, this factor is neutral.

### b. *Convenience of the Parties*

Neither party is located in the Northern District of Ohio. Direct, once organized under Ohio law with its principal place of business here, is now defunct. Direct does not maintain any offices or employees in the district. Campbell is a Delaware Corporation with its principal place of business in New Jersey. Although Campbell operates the at-issue facility in Paris, Texas, it contends that the Eastern District of Texas is not more convenient. (Opp'n at 71.) Given that

7

neither party presently resides in this district or in the Eastern District of Texas, the Court finds this factor is neutral.

### c. *Location of the Documents*

The location of documents is a minor consideration because documents may be sent easily by mail, copied, or even faxed to another location. *Picker Int'l, Inc.*, 35 F. Supp. 2d at 574. By contrast, the location of physical evidence is given more weight as a factor under the § 1404(a) balancing analysis. *Id.*

Here, Campbell contends that all purchase orders were sent to and invoices were sent from Direct's address in Canton, Ohio. Contrarily, Direct contends that all relevant documents are in Washington. To the extent that either party is correct, it is irrelevant to this factor because the documents can easily be sent to another location.

Of greater concern is the location of the water heating system in Paris, Texas. Campbell contends that the water heating system has been modified from its defective state. Therefore, inspection may be of limited value for the purposes of determining how the system was defective. However, Campbell seeks damages for costs incurred from the modification of the system. Inspection of the system may be necessary to determine what modifications occurred as it relates to Campbell's damages request. As such, the location of the evidence strongly weighs in favor of transfer.

### d. *Choice of Law*

Under the 1404(a) analysis, choice of law is a relevant factor, but it is not determinative. *Picker Int'l, Inc.*, 35 F. Supp. 2d at 574. The district court which is located within the state whose substantive law will be applied might be favored because, presumably, that court would be more familiar with the state's law than would be other district courts. *Id.*

Here, the contract between Direct and Campbell specifies that disputes are to be governed by the laws of the state of New Jersey. (Doc. No. 10-1 at 85.) Thus, this factor is neutral because neither the district court in Ohio nor the district court in Texas is presumed familiar with New Jersey law.

e. *Local Interests*

"There is 'value [in] holding trial in a community where the public affected live[.]'" *Nationwide Mut. Fire. Ins. Co. v. Barbour*, No. 5:15 cv 456, 2015 WL 5560209, at *5 (N.D. Ohio Sept. 21, 2015) (alternation in original). The affected water heating system, facility, and employees are in Texas. Campbell still operates the affected Texas facility. The only interest Ohio has in the matter is that a now-defunct company had its corporate headquarters here. Clearly, the affected locality was Paris, Texas. Accordingly, the Court finds that the interests of justice strongly favor transfer to the Eastern District of Texas.

f. *Congestion of Relative Dockets*

The parties have not provided any information on the relative caseloads of this Court and the Eastern District of Texas, and the Court has no reason to believe that this Court's docket is any more, or less, congested than that of the Eastern District of Texas. This factor, therefore, is neutral.

g. *Plaintiff's Choice of Forum*

The plaintiff's choice of forum usually is given "great weight" when considering whether to transfer venue under 1404(a). *Picker Int'l, Inc.*, 35 F. Supp. 2d at 573; *Nicol v. Koscinski*, 188 F.2d 537, 537 (6th Cir. 1951) ("[U]nless the balance is strongly in favor of the defendant the plaintiff's choice of forum should rarely be disturbed."). However, the plaintiff's choice of forum may have diminished weight when the conduct complained of has little connection to the chosen forum, the conduct occurred in another forum, or the other factors weigh heavily in favor of

9

transfer. *Keybanc Capital Mkts. v. Alpine Biomed Corp.*, No. 1:07 CV 1227, 2008 WL 828080, at *7 (N.D. Ohio Mar. 26, 2008) (citing *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 272 (S.D. Ohio 1981)).

Here, plaintiff has chosen this Court as the forum for this litigation. As such, this factor weighs against transfer. However, all the other factors are either neutral or weigh in favor of transfer. Further, all the activity occurred in Texas and Campbell is not at home in this district. The only activity that Campbell admits occurred in this district is that documents were sent to an address here. However, the location of documents is of little importance because they can be sent easily.

Given that the location of the evidence and the local interests strongly weigh in favor of transfer, that Campbell is not at home in this district, and that most—if not all—of the relevant conduct occurred in Texas, this Court finds that plaintiff's choice of the forum does not outweigh the factors favoring transfer.

    h. *Other Factors*

Campbell cites to the forum provision included in Direct's invoices. The invoice forum provision declares that disputes shall be governed by Ohio law and shall be litigated in the "Circuit Court of Stark County, Ohio." (Doc. No. 10-1 at 88.) Campbell contends that because Direct included this provision in their invoice, they cannot now claim venue in this district is inconvenient. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Const. Co.,*

*Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 62, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013).

However, as Campbell admits and Direct emphasizes, this provision is not part of the parties' final contract. (Opp'n at 71; Reply at 90–91.) Instead, the final contract included a forum-selection provision that directed actions to be brought in federal district court in New Jersey under New Jersey law. (Doc. No. 10-1 at 85.) Of course, Campbell waived their New Jersey forum-selection provision by bringing this action in federal court in Ohio.

While a valid forum-selection clause may dictate venue, a proposed, but ultimately rejected, forum-selection clause does not. The Court finds that Direct's proposed forum provision does not weigh against transfer.

### III. CONCLUSION

For the reasons set forth herein, defendant's motion to dismiss for improper venue is DENIED, and defendant's motion to transfer venue to the Eastern District of Texas is GRANTED. This case is hereby transferred to the United States District Court for the Eastern District of Texas.

**IT IS SO ORDERED**.

Dated: November 29, 2018

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**